# Allen *v.* Swarthmore Borough, Appellant.

*Sewers—Permits—Inspector—Borough—Equity.*

Where the authorities of a borough have placed blank sewer permits in the hands of the sewer inspector, to be signed and issued by him as they are applied for, the borough cannot object that the permit was not issued by the secretary as required by ordinance, where it appears that it has received a property owner's money for the permit, and the latter in good faith, has made the connection at the very place designated by the inspector, has completed his drain, and the sewer inspector has inspected and approved the work.

Where a person owns an L shape lot made up of two lots fronting on different streets, but with only one house on the entire premises and with no physical division separating one part of the property from the other, a sewer permit which describes the premises as located on the eastern side of one of the streets, sufficiently describes the premises, although the house fronted on the other street where there was no public sewer. In such a case the facts that the point of connection designated by the inspector was not immediately opposite the lot, and that the owner conducted his drain across the lot of another person, are immaterial.

Where a property owner has paid a borough for a sewer permit and has made a proper connection with the sewer at a point designated by the sewer inspector, he has a right to maintain a bill in equity against the borough to prevent it from cutting off his connection, as a means of compelling him

to pay a foot front assessment for which the owner is either not liable, or which was enforceable in a mode prescribed by ordinance.

Argued Nov. 17, 1903.   Appeal, No. 34, Oct. T., 1903, by defendant, from decree of C. P. Delaware Co., on bill in equity in case of William A. H. Allen v. J. C. Haines, C. W. Scott, F. H. Gedde, F. H. Worrell, George Grau, D. L. Lukens and the Borough of Swarthmore.   Before RICE, P. J., BEAVER, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Bill in equity for an injunction.

In addition to the facts stated in the opinion of the Superior Court, it appeared that on June 19, 1901, councils of the borough of Swarthmore passed the following resolution :

" Resolved,   That W. A. H. Allen, having made connection with the sewer on Haverford avenue in a manner contrary to the laws of this borough, he is hereby ordered to break same within forty-eight (48) hours from receipt of notice of the passage of this resolution, failing to do which, the Inspector is hereby ordered to break same and restore the sewer.

" The Borough Solicitor is hereby ordered also to proceed to collect penalties provided by ordinance number fifty-six (56).

Ordinance No. 49, is as follows :

" Sec. 1. The rate of assessment for sewer for all properties in the borough which shall hereafter be assessed for such charge shall be forty cents per front foot, measured along the side of the street, which assessment, unless sooner paid, shall be collected by liens against property in front of which said sewer is laid : Provided, that corner lots upon which an assessment shall have been paid for any street, shall be exempt from assessments for sewer on the cross street for a distance of one hundred and fifty feet along said cross street."

*Error assigned* was in awarding a perpetual injunction against the borough of Swarthmore.

*L. L. Smith,* for appellant.—Any one dealing with a municipality is bound to see that the agents of the municipality with whom he deals have the authority to perform the acts in question : O'Malley v. Borough of Olyphant, 198 Pa. 525 ; Hague v. Phila., 48 Pa. 526 ; Dillon on Municipal Corp. secs. 45, 47.

The permit did not authorize the connection with plaintiff's house on Harvard avenue: Harrisburg v. McCormick, 129 Pa. 213; Witman v. Reading, 169 Pa. 375.

*George T. Butler*, for appellee.

Opinion by Rice, P. J., July 28, 1904:

The permit under which plaintiff connected his premises with public sewer was in the form adopted by the sewer committee; it was signed by the highway and sewer inspector, he being the proper officer, as shown by the form adopted by the committee, as well as by the fact that the book containing the permit blanks drawn in this form, was delivered to him by his predecessor pursuant to the written order of the sewer committee; and the plaintiff paid the proper permit fee to the inspector, who paid it to the borough treasurer. The language of the ordinance is, that the permit shall be "signed by the borough engineer or the duly authorized agent of the sewer committee," which was done, and "shall be issued by the secretary of the council under the regulations of this ordinance, in the form adopted by the sewer committee." It is objected that the permit was not issued by the secretary. The undisputed facts are, that the book containing permit blanks was originally held by the secretary, but subsequently delivered by him into the custody of the sewer inspector, where, since that time, a period of several years, it has remained with the express approval of the sewer committee. Granting that the issuing of blank permits to the inspector, to be signed and issued by him as they were applied for, was an irregular mode of performing the purely ministerial duty devolving upon the secretary, it was not such an irregularity as could be taken advantage of by the borough after it had received the plaintiff's money for the permit, and he, in good faith, had made the connection at the very place designated by the inspector, had completed his drain, and the sewer inspector had inspected and approved the work.

The permit was to make connection with the public sewer "from his premises located on the easterly side of Haverford avenue." It is objected that the premises from which the plaintiff constructed his branch sewer or drain are not the

same as those described in the permit.   This objection is based
on the assumption that the plaintiff had two distinct lots, an
assumption which might be justifiable if the question of frontage
assessment for municipal improvements was involved, but
which cannot be made, contrary to the fact, in determining
what is the true intent and meaning of this permit.   It is ad-
mitted that there is no physical division separating one part of
the plaintiff's land from the other, the fact being that it is L
shaped, having a frontage of twenty feet on Haverford avenue,
where the public sewer is located, and a frontage of ninety feet
on Harvard avenue, where there is no public sewer.   If there
had been two houses on these premises, one facing towards
Haverford avenue and the other towards Harvard avenue, the
natural construction of the permit would be that it was intended
for the former house exclusively; but as there was but one
house upon the entire premises it would be unreasonable to
hold that the building of the drain from that house was not
authorized by the permit.   The house, though facing Harvard
avenue, was nevertheless on premises having a frontage on
Haverford avenue; which street was mentioned because, prob-
ably, the sewer was on that street.   The description was not
the best that might have been chosen, but when read in the
light of what was to be seen upon the ground it was sufficient
to indicate the premises that were to be drained.   As shown by
his acts, the borough officer, under whose superintendence and
direction the connection was required by the permit to be made,
and was made, construed it precisely as did the plaintiff, namely,
as applying to this house.   In view of all the surrounding con-
ditions more fully described in the findings and opinion of the
learned judge below, all of which must have been known to the
borough officer when he directed where the connection should
be made, and during the progress of the work, this was the only
reasonable construction to be put upon the permit.

   The manifest purpose of the permit was to enable the plain-
tiff to construct and maintain a drain from his building to the
public sewer, and he made the connection at the place pointed
out by the proper officer, which, by the way, was the only place
where it was feasible to make it.   The facts that this point of
connection was not immediately opposite his twenty feet front-
age on Haverford avenue, and that he conducted his drain

across the lot of another person are immaterial. Neither of these acts was forbidden by the ordinance or the permit. What the ordinance forbids is the connecting of more than one building through one house connection without a special permit. Under the permit now being considered, no other building can be connected with the sewer; therefore the defendant's fears that under the construction contended for by the plaintiff he has acquired privileges for as many buildings as may hereafter be erected on his own lot or the lot of his sister, which his drain crosses, are groundless.

A discussion of the liability of plaintiff's property to assessment by the front foot rule seems out of place. Such liability, whatever it may be, is imposed by another ordinance than that under which permits to connect with the sewer are issued, and is, or was, enforceable in the mode therein prescribed. Neither ordinance makes the discharge of this liability a condition precedent to the issuing of a permit or to the execution of the privilege granted. The plaintiff paid all that the ordinance required him to pay for the permit, and upon no principle can he be required to pay more in order to entitle himself to the aid of a court of equity to prevent the defendants from wrongfully destroying the drain that was lawfully made pursuant thereto.

There can, ordinarily, be no judicial restraint or interference with the bona fide exercise by a borough council of powers, legislative or discretionary in their nature, which do not violate private rights; nor is anything of that kind involved in this decree. Its purpose and effect are simply to prevent the execution of an invalid resolution of council which, in addition to directing the borough solicitor to proceed to collect penalties as provided by ordinance fifty-six, also requires the sewer inspector to break the connection of the plaintiff's branch sewer or drain with the public sewer,—an act which would be contrary to law, prejudicial to the interests of the plaintiff, and for which the remedy at law would be inadequate. We have no doubt of the right of the plaintiff to maintain his sewer, or of the jurisdiction of a court of equity to restrain the borough and its officers from interfering with it in the manner proposed.

The decree is affirmed, the costs of suit, including this appeal, to be paid by the borough of Swarthmore.